FERRY–HALLOCK CO. v. HALLOCK et al.

(Circuit Court, E. D. Pennsylvania. December 16, 1905.)

No. 10.

1. PATENTS—INFRINGEMENT—CHANGE OF FORM.
     Where the whole substance of an invention—that which entitled the inventor to a patent—may be copied in a different form, it is the duty of the courts to look through the form of an alleged infringing device for the substance which the patent was designed to secure, and where that is found there is infringement.
     [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 372.]

2. SAME—MACHINE FOR MAKING HAT PACKING RINGS.
     The Ferry patent, No. 523,833, for a machine for automatically making pasteboard strips for hat packing rings, while not a pioneer patent, was not anticipated and discloses patentable invention, the machine being a marked improvement in utility over those of the prior art; also held infringed.

In Equity. On final hearing.

Gifford & Bull, for complainant.
Horace Pettit, for respondent.

HOLLAND, District Judge. A patent, No. 523,833, for a machine for automatically making pasteboard strips for hat packing rings was issued to Frank P. Ferry July 31, 1894, upon his application for the same, filed in the Patent Office March 5, 1894. This patent was assigned to the complainant company, who is the present owner. Suit was brought against defendants alleging an infringement of claims Nos. 1, 2, 4, 5, and 6 of complainant's patent. The defendants admit that the title to the patent is vested in complainant, and that they made and used, prior to bringing the suit, a machine for making strips for hat packing rings like that shown in complainant's Exhibit Defendant's Machine, sheets 2, 4, and 8, referred to in paragraphs 1 and 5 of the statement of facts in complainant's brief, but set up the defense that this machine does not infringe any of the claims of the patent in suit, and the defense of prior use for more than two years antedating the application for the patent.

There are three different devices that play an important part in the history of this controversy. The Ferry patented machine was constructed and extensively used, and is the only one of the three which has been patented. It appears that long prior to 1891 Frank P. Ferry had been engaged in the business of manufacturing articles of pasteboard, and he engaged the services of Monroe P. Wilkins, a well-known builder of automatic machinery, to build a machine for him capable of making hat packing rings with beaded edges. Wilkins succeeded in accomplishing the object of his employment, and delivered to him a machine of that kind in September, 1891, which succeeded in automatically making strips for hat packing rings, and it comprised machines for continuously feeding the strip, for curling the lateral edges of the strip while it was being fed, for imparting to the curled strip a preliminary bend in the arc of a circle, and for severing the strip into predetermined lengths, but it was found that it was necessary to finish this strip so produced, in order that it might become desirable commercially, to pass it through another or second machine so that it would not lose its curl. This Wilkins machine was delivered to Theodore Clark & Co. of Danbury, Conn., who used it from September to the 1st day of December, 1901, when the Clark Box Company was organized, and the Wilkins machines on that date were leased to this latter company by Theodore Clark & Co., and the Clark Box Company used the Wilkins machines thereafter under a license, for which they paid a royalty to Theodore Clark & Co. for the rings manufactured by these machines.

So far as that machine was concerned, it is plain from the evidence that it was regarded as completed, and a public use was being made of it. It was not leased and used for experimental purposes, but was being utilized generally in a public use for profit, and so used for two years prior to the application for the patent in question. If the inventor uses his invention for profit, and not by way of experiment, that is a public use. Walker on Patents, par. 94. Justice Matthews said, in Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 Sup. Ct. 122, 31 L. Ed. 141:

"Where the use is mainly for the purpose of trade and profit, and the experiment is merely incidental to that, the principle and not the incident must give character to the use."

This machine then was in public use, and must be considered in connection with the claim of the complainant that they are pioneer inventors, and that their patent in suit is a basic one in the art of automatically manufacturing hat packing rings from a continuous strip of pasteboard. It precludes them from successfully making this claim, and they are, of course, restricted to "certain details of construction and combination" and combinations of elements set forth in their specification and subsequently claimed by them.

The Wilkins devices were not a commercial success, as there were two machines. The first was the curling device, and the second the finishing machine, and what the patentee in this case did was to invent a machine to manufacturé hat packing rings automatically and with great facility from a continuous strip of pasteboard, and, furthermore, to provide means to accurately and uniformly form a curved bead or roll under both the top and bottom edges of the ring, which bead or roll will not be liable to become distorted after leaving the machine, and to accomplish this in one machine in such a way as to save much of the labor required on the two Wilkins machines, and to so finish the edges of the rings that in their use the hats packed in boxes would be protected from chafing—an objection heretofore experienced with all other hat packing rings. The curlers and much of the machinery of the device in the patent were similar to the curlers and machinery in general use, but the patentee has so improved and combined the elements of the Wilkins and other machines as to entitle him to the distinction of being an inventor, and his device entitled to be patented. It not only finishes the hat packing ring in a much more artistic and satisfactory way, but it has succeeded in doing this with one-twentieth of the cost for labor.

The machine is somewhat complicated, and the specifications are very long. It is not necessary to copy them here. There are six claims, five of which it is alleged have been infringed, and are as follows:

"(1) In a machine for automatically making pasteboard strips for hat packing rings, the combination of the mandrels, devices for curling the edges of the strip around said mandrels and for disposing the extremities of said edges flat against the strip whereby hollow beads are formed and stayed at said edges, and means for feeding the strip during the formation of said beads, sustantially as set forth.

"(2) In a machine for automatically making pasteboard strips for hat packing rings, the combination of the mandrels, devices for curling the edges of the strips around said mandrels and for disposing the extremities of said edges flat against the strip whereby hollow beads are formed and stayed at said edges, and means for grasping the strip between said curled beads and drawing the same through the curling devices, substantially as set forth."

"(4) In a machine for making pasteboard strips for hat packing rings, the herein described device for curling the edges of the strip, comprising a block having extending there through a tapered elongated opening provided with a lateral gate, and an angle plate having formed therewith a conical shaped elongated mandrel, said plate being secured to such block with the mandrel extending centrally throughout said tapered opening, substantially as set forth.

"(5) In a machine for automatically making pasteboard strips for hat packing rings, the combination of automatically operating appliances for continuously feeding the strip, for curling the lateral edges of the same while the strip is being fed through the machine, for imparting to the curled strip a pre-

liminary bend in the arc of a circle, and for severing the strip thus curled and bent into predetermined lengths, substantially as set forth.

"(6) In a machine for making pasteboard strips for hat packing rings, the combination of the block having extending there through a tapered elongated opening provided with a lateral gate, the angle plate having formed therewith a conical shaped elongated mandrel and secured to said block with the mandrel extending centrally throughout said tapered opening, and means for feeding the strip through said block and around said mandrel, substantially as set forth."

We find from the evidence and a comparison of the machine patented with that of the defendants, so far as can be done in this case from the cuts submitted, that claims Nos. 1 and 2 are infringed. In the evidence there are quite a number of descriptions of the defendants' machine, but we do not find any language that so accurately describes this machine in its essential elements as the language used by complainant in its claims Nos. 1 and 2 of its patent. The difference in the shape of the stayed edges is not material. The extremities of these edges of the strips are not disposed flat against the strip. They are formed so as to lie in a plane of the strip, and if extended, would lie flat against the strip. It is such a slight variation from the manner of disposing of the edges of the strip as not to permit the defendants to escape the evident intention of copying the substance of this patent.

As to claims 4 and 6, it is evident that the defendants' combination is an infringement of both. Its curlers are comprised of a block having extended throughout a tapered elongated opening a conical-shaped elongated mandrel, the mandrel extending centrally throughout the said tapered opening, and the defendants' curlers are "provided with a lateral gate" extending the length of the curler. There is, however, no angle plate in the defendants' structure; but it has its mandrel supported centrally within the conical body by a web figure, performing precisely the same function as the angle plate of the patent. The angle plate of the claim shown in the drawing of the patent as separable from the block or body of the curve is mere matter of detail and personal choice only, and has no bearing upon the operation or efficiency of the curling devices. Furthermore, such change of detail from two pieces to one, or from one piece to two, would not require even high mechanical skill, but is quite within the ability of the ordinary mechanic to devise and execute.

In determining a question of infringement, the important thing to be considered is the function of the structure in question. The function of the angle plate of the patent in suit is to support the mandrel in the curler. Precisely the same function is performed by the inwardly extending web of the defendants' curler, as by the angle plate of the patent in suit. The former is, therefore, the mechanical equivalent of the latter. If the machine complained of were a copy in form of the machine described in the specification, of course, it would be at once seen to be an infringement. It could be nothing else. It is only ingenious diversities of form and proportion, presenting the appearance of something unlike the thing patented, which give rise to questions; and the property of inventors would be valueless, if it were enough for the defendants to say:

"Your improvement consisted in a change of form. You describe and claim but one form. I have not taken that, and so have not infringed."

Where the whole substance of the invention may be copied in a different form, it is the duty of the courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to a patent, and which the patent was designed to secure. Where that is found there is infringement. Winans v. Denmead, 15 How. 338, 14 L. Ed. 717; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

Claim 5, in view of the prior art, we think is so general in its terms as to cover any combination of old parts which would automatically make pasteboard strips for hat packing rings, by curling the lateral edges of the same while the strip is being fed through the machine. We do not intend to hold that the complainant's device so thoroughly covers the ground that no other machine can be constructed to accomplish the same purpose, providing it accomplishes the result by a combination invention differing from that of the complainant's. For that reason we think this claim is too broad to be sustained.

Let a decree be drawn in accordance with this opinion, holding that claims 1, 2, 4, and 6 are infringed, with costs of suit.