DUNDON v. PEDERSEN.

(District Court, N. D. California, Second Division.  June 29, 1914.)

No. 15327.

1. PATENTS ⬡⇒328—INFRINGEMENT—DOOR FOR DIGESTERS.
    The Dundon patent, No. 653,503, for a door for digesters, adapted for
    use in canneries where steam is used for cooking the canned product, con-
    strued, and *held* infringed.

2. PATENTS ⬡⇒237—INFRINGEMENT—SUBSTITUTION OF EQUIVALENT PARTS—
    "SUBSTITUTION OF PATENTLY EQUIVALENT MEANS."
    The "substitution of patently equivalent means" to perform one of the
    functions of an old element of a patented combination, and that a sub-
    sidiary one, which works no change in the unitary result, does not avoid
    infringement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 374, 375; Dec.
    Dig. ⬡⇒237.]

In Equity.  Suit by Patrick F. Dundon against L. A. Pedersen.  On
final hearing.  Decree for complainant.  Decree affirmed, 220 Fed. 309.

Francis M. Wright, of San Francisco, Cal., for complainant.
Miller & White, of San Francisco, Cal., for defendant.

VAN FLEET, District Judge.  [1] This is a bill to enjoin the in-
fringement of a patent, No. 653,503, issued to plaintiff on July 10, 1900,
covering "doors for digesters"—a steam-tight door for use on retorts
in canneries and other establishments where the processing of the
product is by cooking with steam, the successful operation of which
requires the introduction of steam of considerable pressure.  To meet
the requirements of the process the door of the retort is required to be
large enough to enable the cans or other containers to be readily and
quickly placed in and removed from the retort.  It must be heavy to
withstand the pressure of the steam, be capable of being opened and
closed quickly, and to work efficiently it must be made absolutely steam-
tight.  The device of the patent is designed to meet these necessities,
and, briefly described, is constructed substantially as follows:

The door is not itself hinged to its frame, but is swung on two bars,
called "pressure bars," which pass horizontally through housings se-
cured to its outer surface or face, and these bars form the hinges for
the door, being hinged at one end to the door frame in such manner
that when the door is swung to it closes squarely in its seat; the other
end of each bar being engaged and secured by a cam connected with a
link hinged to the opposite side of the frame.  When closed, the door
bears against a gasket of suitable material set in a channel in the inner
face of the frame, and is pressed firmly and evenly against the gasket
by means of four screws passing through the housings and pressure
bars and applied to its outer surface in such manner that, when the
pressure of the screws is applied, the door fits at all points tightly on
the gasket and thus prevents the escape of steam.  The housings neces-
sarily fit loosely upon the pressure bars to permit the door to respond to
the pressure of the screws, and this looseness, having a natural tenden-

⬡⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cy to allow a play of the door upon the bars detrimental to its ready and perfect operation in closing, is avoided or taken up by employing what is designated as "radius links." This element and its function is thus described in the patent:

"The housings *11*, as will be seen, permit some play of the bars *5*, and the door *2* is not held rigidly thereby. To prevent lost or undesirable motion of this kind, I provide the radius links *18*, attached to the lug *19* on the door frame and lug *22* on the door; the fixed pivot *20* being coaxial with the pivots *21* of the bars *5*. The cams *10* are made with more or less eccentricity, as the amount of pressure required, and when set for closing, as in Fig. II, the extreme of the eccentric passes the point of impingement, so the cam is locked or held against accidental release. In this manner it will be seen that the tendency of the door *2* to turn in its flat plane about the pivots *21* is resisted by the links *18*, thus producing the effect of closely fitting hinges and a true and steady movement of the door in opening and closing."

It is in this last-described feature that the novelty of the combination is disclosed, all the other elements being found in a former patent issued to plaintiff in 1890. The subjoined drawing is a correct portrayal of the device:

Defendant, having need of retort doors for use in his fish cannery in Alaska, purchased a number from plaintiff made in accordance with the patent as above described and has been using them therein, but, finding that he required an additional number, determined to construct them for himself. He accordingly procured castings to be made in San Francisco of the different parts, shipped them to his cannery, and there assembled them. The doors thus built differ structurally from that of plaintiff in these particulars only: The pressure bars, while attached to the door by housings in the same manner, do not constitute hinges for the door it being hinged independently to the frame by ordinary hinges loosely pivoted to admit of the door swinging flatly and evenly into its seat, and, the door being closed, the pressure bars are secured to the frame at both ends by appropriate fastenings. In other respects than serving as hinges, these bars perform the same functions as in plaintiff's device; the pressure being exerted through screws passing through the housings and bars and pressing the door firmly upon the gasket.

This loose hinging allowing, as in plaintiff's device, a play or sagging of the door, interfering with its ready closing and adjustment in its seat, the defendant, to overcome that tendency, employs what he terms a "tie rod," being a single bar or rod forming a tie or link pivoted to the door and frame in a precisely similar manner and in the same relative position, and performing exactly the same function as the so-

called "radius links" of plaintiff's device. In all other respects the defendant's device is the duplicate of that of plaintiff. It is the use of this structure, and particularly the element called a "tie rod," which it is claimed constitutes an infringement of plaintiff's patent, and whether it does or not is the one question presented, since noninfringement is the sole defense; and this defense is rested upon plaintiff's evidence, no testimony being taken on behalf of the defendant.

The question is made to turn upon the construction of claim 3 of the patent, that being the claim charged to have been infringed. The claim is in these words:

"3. In a hermetically closing door, pressing bars to force the door upon its seat, bearing at four or more points thereon, forming also hinges for the door, and in combination therewith the radius links 18 pivoted in the same axial line as the pressing bars and holding the door in adjustment thereon, substantially as specified."

That defendant's device constitutes an infringement of this claim is, I think, obvious, unless the differences in structure above noted can be held to be elemental and such as to change its co-operative or unitary action from that of the combination of the patent. Defendant's contention is that these differences are material, and that its device cannot be held to infringe without ignoring certain limitations in the language of the claim which it is said constitute substantial features of plaintiff's invention, and which the court is therefore not at liberty to disregard. The first of these, it is claimed, is found in the words, "forming also hinges for the door," in describing the use of the pressure bars. It is said that this language expresses a functional limitation which restricts the combination to one in which the pressing bars not only perform the function of pressure bars, but also the additional function of hinges for the door.

[2] Is the difference in function between the two devices in this respect so material as to avoid infringement under the rule invoked? As indicated above, the whole element of novelty in plaintiff's combination is the means of taking up or avoiding the lost motion incident to the loose manner required in hanging the door where pressure bars are employed. All other elements of the combination are old, and covered by plaintiff's prior patent. Is the substitution of a patently equivalent means to perform one of the functions, and that a subsidiary one, of an old element of the combination, which works no essential change in the unitary result—for that is obviously all the defendant's change involves—sufficient to defeat plaintiff's right to protection of that which is new and valuable in his invention?

It seems to me that such a result would be subordinating substance to mere form, and I do not think the claim is to be given a construction so narrow. It is not an instance, to my mind, where form partakes of the substance; but the case, it seems to me, falls within the very salutary principle announced in Winans v. Denmead, 56 U. S. (15 How.) 330, 342, 14 L. Ed. 717, where it is said:

"Where form and substance are inseparable, it is enough to look at the form only. Where they are separable, where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which

entitles the inventor to his patent, and which the patent was designed to secure. Where that is found, there is an infringement; and it is not a defense that it is embodied in a form not described, and in terms claimed by the patentee."

It is next contended that claim 3 restricts the combination to one in which "more than one link or tie rod is used to keep the door in adjustment;" and it is said:

"It will be noted that the word 'links' is in the plural, thus calling for at least two links or tie rods. It is not contended that defendant uses more than one tie rod in his device to keep the door from sagging. It is obvious, therefore, that the defendant has dispensed with one of the elements of claim 3 and has substituted nothing in its place. For this reason the defendant's device does not infringe."

But this contention has even less merit than the first, for it is quite obvious that it is based upon a clear misapprehension of the construction of plaintiff's combination as contemplated and described in the patent. This, I think, sufficiently appears from the specifications, but it appears very clearly from the drawings attached to the patent (which may be looked to in case of doubt—Walker on Patents, § 182) that this feature of the device, which is given a plural designation, is but in fact a single element. It is doubtless given its plural name by reason of the fact that it is composed of two parallel pieces of metal of uniform length, both pivoted to the same lug at each end and forming but one link or stay,—being thus constructed, very likely, for additional strength. It is no less a single element as disclosed in plaintiff's combination than the "tie rod" of defendant's device, which, as stated, is made from a single rod or bar, and like the latter is pivoted to the door and frame in the same manner.

It is further said of this element that it is given a functional limitation in the claim which distinguishes it from the office of the tie rod of defendant's device. This is based upon the language, "pivoted in the same axial line as the pressing bars and holding the door in adjustment thereon." And defendant says:

"According to this limitation the links *18* must both be pivoted in the same axial line in which the pressing bars are pivoted. In the defendant's device, the pressing bars are not pivoted at all, and are not connected to the retort wall in the same axial line in which the single tie rod is pivoted. It will also be noted that the words 'holding the door in adjustment thereon' are a functional limitation, and restrict the combination to one in which two or more links or tie rods hold the door in adjustment on the pressing bars. In defendant's device, the door is not supported by the pressing bars, but by the hinges. Therefore the single tie rod used by defendant cannot hold the door in adjustment on the pressing bars, which are, in fact, supported by the door. Such tie rod or link merely prevents the door from sagging upon its hinges, thus keeping it in adjustment relative to the hinges, and not relative to the pressing bars."

These criticisms are largely answered by what has already been said. It is quite true that defendant's tie rod is not pivoted in the same axial line with the pressing bars, because the latter in his device do not, as we have seen, form hinges. But the rod or link is pivoted in an axial line with the hinges which defendant has substituted for the pressure bars to perform that office; and while, as defendant says, his

tie rod cannot, for obvious reasons, hold the door in adjustment on the bars, it does hold it in adjustment on the substitute hinges, and, as heretofore shown, subserves the same purpose in that relation as the radius links of plaintiff.

These considerations are sufficient, I think, to show that the differences in construction of the device of the defendant are not such as to avoid infringement of plaintiff's patent. Plaintiff is accordingly entitled to a decree as prayed.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes