LOWELL MACH. SHOP v. SACO & PETTEE MACH. SHOPS.

(Circuit Court of Appeals, First Circuit. April 22, 1903.)

No. 442.

1. PATENTS — INFRINGEMENT — DEVICE FOR GRINDING FLATS OF CARDING MACHINES.

    The Knowles & Tatham patent, No. 464,029, for a device for grinding the wire teeth of flats used in carding machines, the essential feature of which is a fixed guide to hold the plane surface of the flat in a position tangential to the grinding roll at the point of contact, is limited to the construction shown, in view of the prior art, and is not infringed by the device shown in the Penney patents, Nos. 544,441 and 620,353, for grinding flats having an irregular convex surface.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 114 Fed. 497.

William A. Macleod (Macleod, Calver & Randall, on brief), for appellant.

William K. Richardson, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

COLT, Circuit Judge. This appeal relates to the Knowles & Tatham patent, No. 464,029, granted December 1, 1891. The subject-matter of the patent is an auxiliary grinding apparatus attached to a carding engine for the purpose of grinding the wire teeth of revolving flats linked together in the form of an endless chain, where the working surface of each flat is slightly tilted or inclined to the line of its bearings. The case presents only the question of infringement.

The single claim of the patent reads as follows:

"The hereinbefore described arrangements of apparatus for grinding the flats employed in carding engines in which revolving flats are employed, which arrangements of apparatus consist in fixed parts provided with surfaces, $e^2$ and $e^3$, formed parallel with each other and separated from each other by a difference of level such that a flat held against the surfaces, $e^2$ and $e^3$, will have its card-wire surface parallel to said surfaces, $e^2$ and $e^3$, and in levers, such as g, by means of which the flats being ground may be suc-

cessively held against the surfaces, e² e³, and arranged, employed, and operating in conjunction with a grinding roller, substantially as and for the purposes hereinbefore described."

This claim comprises the combination of a fixed guide having two parallel surfaces separated from each other by such a difference of level that a flat held against the surfaces will have its card-wire surface parallel with such surfaces, and levers by means of which the flats, while being ground, are successively held against such parallel surfaces, all arranged to co-operate with a grinding roll as described.

The question of infringement turns substantially on the fixed guide, which is the important and novel feature of this claim. This guide has two parallel surfaces connected by an incline or set-off. The defendant's guide has an irregular concave surface. Notwithstanding this radical difference in form, the complainant maintains that the two guides are essentially the same in structure, and identically the same in mode of operation.

In a carding engine of the type under consideration, the cotton is combed between the slowly moving wire teeth of the card clothing upon the flats and the rapidly moving wire teeth of the card clothing upon the main cylinder.

The flats are long, narrow, rigid bars of metal, somewhat longer than the main cylinder. The working face of each flat is a carefully trued plane. To this face is attached a strip of card clothing, the width of which is somewhat less than the width of the flat, and its length is somewhat less than the length of the flat, it being the same length as the cylinder. At each end of the flat is a guiding surface, or "shoe," upon which it travels. The flats are linked together in the form of an endless chain, and during the carding operation they travel with their shoes sliding upon guideways, or "flexible bends," around a portion of the periphery of the cylinder. While one half of the flats are in working position on the cylinder, the other half are slowly passing in an opposite direction back to a working position. It is necessary that the series of flats should be adjusted with great accuracy and uniformity, in order that the teeth of the flat should always maintain their proper relation to the teeth of the cylinder.

In its working position, the wire surface of each flat is not parallel to the wire surface of the cylinder. This is because each flat is slightly tilted or "heeled," the effect being to bring the "heel" edge of the flat a little nearer the cylinder than the "toe" edge. This tilt is caused by a slight bevel, or "heel cut," in the front surface of the shoe of each flat, which gives the shoe two bearings, the heel bearing and the toe bearing. It follows that a line drawn through these bearings will not be parallel to a line drawn through the surface of the clothing, and that, consequently, such surface will be at an angle or slightly inclined to the line of these bearings and to the cylinder. In other words, the distance from the heel bearing to the plane of the surface of the clothing is greater than the distance from the toe bearing, and the amount of the tilt or inclination is equal to the difference in these distances.

The Knowles & Tatham patent in suit is for an apparatus for grinding the plane wire surface of heeled flats as they are slowly passing back to their work and while their wire surface is in an upward position. The flats approach the grinding roll in their normal tilted position, or at a slight angle, and the problem is to correct this tilt, and to present each flat in a horizontal position, tangential to the grinding point, as it slowly travels past the grinding roll. If the tilt were not corrected, it is manifest that only the heel of each flat would be ground off.

This problem has been usually solved by the introduction, during the grinding operation, of some form of guiding mechanism which operates to correct the tilt, and so present the wire surface horizontally to the grinding point. Previous to the Knowles & Tatham invention several forms of guides were in common use.. In the earliest form the back surface of the shoe of the flat constituted this additional guide. This back guiding surface was made parallel to the plane of the wire surface, and, of course, at an angle to the line of the shoe bearings on the front surface of the shoe. In view of this parallelism between the surface of the wire clothing and the back surface of the shoe, when the flat rested upon this back guiding surface as it traveled along a straight guide, the wire surface would be presented horizontally to the grinding point. In this way of solving the problem the flat itself has two separate guide surfaces, one for supporting it when at work on the cylinder, and the other for supporting it during the grinding operation.

Another old way of solving the problem was by the interposition of a wedge-shaped sliding block during the grinding operation. This wedge is thicker at the heel than at the toe. The difference between these thicknesses corresponds to the tilt or inclination of the wire surface of the flat. As the flat approaches the grinding point, the front surface of the shoe, with its heel and toe bearings, is pressed up and bears against this wedge-shaped block; the effect being to correct the tilt, and so present a horizontal surface to the grinding roll. This device is the subject of the British Clegg & Lucas patent of February 19, 1874, in which the wedge is referred to as the sliding block, k. In reference to the operation of the sliding block, the patent says: *

"As each flat nears the said grinding roller a projection, p, on the back of the flat, slides up the face of the incline, h, whereby the said flat is raised until the front surface [of the shoe] * * * bears against a· block, k, which is fitted to slide in the fixing, l. * * * The said front is maintained in contact with the block, k, for a time by the action of a spring, g. If preferred, a lever or bar pressed upwards by means of a weight, * * * or any other suitable arrangement, may be substituted for the spring, g, so long as the end of the flat is maintained firmly in contact with the block, k, whilst the cards on the said flat are being ground. The said block is formed with a face, which is inclined at the same angle as the 'front surface' of the end of the flat, and reversed with reference to the said surface, so that when the said surface bears against the said block the card surface is brought into a position parallel with the plane in which the said block slides."

Another way of solving the problem was by means of a guide which moved towards or from the grinding roll as the flat traveled past.

The guide is pivoted at one end, while the other end is supported on a movable cam surface. As the flat travels past the grinding roll the cam raises the guide just enough to compensate for the tilt of the card surface with relation to the shoe guides. This guide is the subject of the British Hetherington patent, No. 2,642, issued in 1887.

All these grinding mechanisms have certain things in common. In all the subject-matter, or tool, is a flat with a plane or straight surface, and in all the product is a flat with a ground plane surface. In all the problem was the same, namely, to grind the inclined surface of a chain of revolving tilted flats, successively, while on their way back to their working position on the main cylinder of a carding engine. In all this problem was solved in the same way, by the correction of the tilt of the flat. In all the tilt is corrected in the same way, namely, by presenting the heel edge of the surface or the clothing to the grinding roll in a horizontal position, tangential to the grinding point, and at an angle to the shoe bearings, and maintaining the movement of the flat in the same straight line until the entire surface of the clothing has passed the grinding point. The only difference in these several devices is in the specific mechanical means employed for doing the work.

In the first device mentioned the essential means is the guide on the back surface of the shoe of the flat made parallel with the plane of the clothing surface, by which the tilt of the flat is corrected, and the surface of the clothing is maintained in a horizontal position tangential to the grinding point. Here the invention may be said to reside in the conception of an additional guide on the back of the shoe, which is parallel with the plane of the surface of the clothing, and its embodiment in an operative mechanism.

In the second device, the Clegg & Lucas, the essential means is the sliding wedge, made thicker at the heel than at the toe to compensate for the tilt caused by the bevel in the shoe, so that when the shoe is pressed against it the tilt is corrected, and the wire surface assumes a horizontal position tangential to the grinding point, which is maintained throughout the grinding operation. Here the invention may be said to reside in the sliding wedge or block, and its embodiment in an operative device.

In the third device, the Hetherington, the essential means are the pivoted straight guide and the movable cam surface to raise the guide just enough to compensate for the tilt of the flat, and to maintain the flat in a horizontal position tangential to the grinding point during the grinding operation. Here the invention may be said to reside in the conception of the pivoted guide and movable cam, and their embodiment in an operative device.

Coming now to the Knowles & Tatham patent in suit, the essential means is the fixed guide, with its parallel surfaces separated from each other by a difference in level equal to the depth of the bevel of the shoe, so that when the shoe bearings are pressed against these guide surfaces the surface of the clothing is parallel to these surfaces, the effect being to correct the tilt and bring the surface of the clothing to the grinding roll in a straight line tangential to

the grinding point throughout the grinding operation. Here the invention may be said to reside in the conception of a fixed guide having two parallel surfaces in different planes, which are connected by an incline or set-off equal to the depth of the bevel of the shoe and its embodiment in an operative device.

By this review we are enabled to set the Knowles & Tatham device in its proper place in the art. It does not mark any great advance in the art. It does not solve any new problem. At most, it is merely an improvement on what was old. Further, the evidence does not show to what extent it has gone into use, nor that it is preferred to earlier grinders, nor that it has supplemented them. Under these circumstances, the only advance which it can be said Knowles & Tatham made over the prior art was to devise a simple, ingenious, and meritorious guide in a grinding apparatus for grinding the plane surface of revolving tilted flats. It is a fixed guide, as distinguished from the old movable guides, and by reason of this feature it dispenses with the additional mechanism which was necessarily employed in connection with movable guides. It also has two parallel surfaces in different planes, which would seem to be an indispensable characteristic of any fixed guide which was to correct the tilt of a plane-surfaced flat. The fact, however, that this guide is fixed, and that it has two parallel surfaces in different planes instead of a simple straight surface, does not change its mode of operation in any important respect. It still operates just as the old guides operated to correct the tilt, and in the same way, by presenting the heel edge of the wire surface to the grinder on a line tangential to the grinding point, and maintaining the movement of the flat in the same straight line until its wire surface has passed the grinding point. It makes no essential difference in the mode of operation whether the beveled shoe of the flat is pressed against the two parallel surfaces of the Knowles & Tatham fixed guide, or against the sliding block of Clegg & Lucas, or whether the tilt is corrected by the movable guide of Hetherington, since the effect upon the line of movement of the flat is the same. These devices are distinguished from each other by the difference in the particular means employed, rather than by any substantial difference in the mode of operation.

The Knowles & Tatham patent is merely for an improved form of means for accomplishing an old result. It does not employ any new mechanical principles or any essentially new mode of operation. The substance of the invention resides in the form of the means. It is a case where form and substance are inseparable. Winans v. Denmead, 15 How. 330, 342, 14 L. Ed. 717.

The defendant's grinder is covered by the Penney patents, No. 544,441, issued August 13, 1895, and No. 620,353, issued February 28, 1899. This device is for grinding the irregular curved surface of revolving heeled flats in a carding engine. In the Knowles & Tatham patent we have a plane surfaced heeled flat whose wire surface approaches nearest the cylinder of the carding engine at the very edge of the heel, and then slopes gradually and uniformly away to the toe. In the Penney patents we have a heeled flat with an

irregular convex surface, which approaches nearest the cylinder at a point some distance from the heel edge, and then curves gradually off from either side of that point to the heel edge and the toe edge, the effect being to widen the working part of the wire surface of the flat.

In the Penney grinder the tilt of the flat is corrected, and the flat ground, by means of a concave guide of irregular curvature attached to the "floating cradle" which supports the grinding roll. During the grinding operation the flat is not pressed upward against the guide by levers, as in the Knowles & Tatham device, but the weight of the cradle and roll press the guide down upon the flat.

The purpose of the curved guide is clearly stated in the specification of the second Penney patent:

"I prefer to use for guiding the flats the curved guides shown, as they cause the flats to take a course which grinds the wire surface of each flat the crowning or convex form, the surface being thus rounded up from the heel for a considerable width and then rounded down to the toe, the highest part of the crown being nearer the heel. By this form of grinding the working part of the flat at the heel is much widened, and consequently made more effective than in the flat, which is ground straight back from the heel, and which, therefore, has a much narrower working surface at the heel."

The old grinders in the art were all directed to grinding the plane surface of a heeled flat in a revolving chain of flats. The Knowles & Tatham invention is an improved form of this old type of grinder. The Penney grinder is a departure from the old type, since it is directed to grinding a heeled flat with an irregular curved surface in a chain of revolving flats. This was a new problem in this art, which, so far as appears, Penney was the first to solve. The two problems are manifestly different, and cannot be solved by the same means or by the same mode of operation, in any practical sense. The Knowles & Tatham guide, with its parallel surfaces separated by a set-off, is in no way adapted for grinding a heeled flat with a curved surface, and the curved guide of the Penney patent is in no way adapted for grinding a heeled flat with a plane surface. It is as impossible to grind a Penney flat by means of a guide with parallel surfaces in different planes as it is impossible to grind a Knowles & Tatham flat by means of a guide with an irregular curved surface. When Penney approached the construction of a proper guide for his curved-surface flat, the Knowles & Tatham guide was of no assistance to him, any more than the Penney guide would have aided Knowles & Tatham in the construction of their guide, had they known of it.

The two guides are different in structure, mode of operation, and result attained. So far as structure is concerned, no guides could be farther apart, for a parallel surface may be defined as a surface without curvature, and a curved surface as a surface which has no finite portion in a straight line.

The complainant seeks to prove the identity of the two structures in the following manner: The defendant's curved guide has essentially two parallel surfaces at such a difference in level as to compensate for the tilt of the flat, since its curvature is such that any

given point on the heel-guiding curved surface lies in a different plane, or at a difference in level, from a corresponding point on the toe-guiding surface, the distance between these two points being equal to the depth of the bevel of the shoe. To prove that a guide with parallel surfaces separated by a set-off has essentially the same structural form as a guide with an irregular curved surface because they have mathematical points which correspond is too refined for the practical administration of the patent law.

So, with regard to the mode of operation of these guides, it is apparent that it cannot be the same, in any ordinary sense, by reason of the essential difference in their structure. As the Knowles & Tatham guide is composed of parallel surfaces, the path of movement of the flat during the grinding operation is in a straight line tangential to the grinding point. As the defendant's guide is composed of an irregular curved surface, the path of movement of the flat during the grinding operation is in an irregular curved line, and never in a straight line. In the Knowles & Tatham guide, the grinding point on the roll, during the grinding operation, is always the same, since the movement of the flat past the roll is always in a straight line tangential to the same grinding point. In defendant's guide, the grinding point on the roll, during the grinding operation, constantly shifts, since the movement of the flat past the grinding roll is always in a curved line, which brings the surface of the flat at every instant of its movement to a different grinding point on the roll. The effect of this constant shifting of the grinding point is to give defendant's flat a kind of rocking movement as it passes the grinding roll.

The complainant seeks to show the identity of these modes of operation upon the theory that at each instant of time during the grinding operation the flat occupies a position tangential to some grinding point, and that this is because the heel and toe bearings of defendant's curved guide are such that, at each instant of time, they are separated by a difference in level just sufficient to compensate for the tilt or inclination of the surface of the flat relative to its shoe bearings.

Conceding that complainant's experts have demonstrated by most careful and elaborate mathematical tests the truth of this theory, it still does not seem to us that, in any sense within the patent law, or in any sense within the remote contemplation of the respective inventors, or in any sense outside the most refined reasoning respecting instances of time, fixed relations, elemental parts, and difference in level of points, these modes of operation are the same.

The great difficulty we have encountered in the present case has been, not in understanding the patent in suit, but in trying fully to comprehend how it was possible, in order to make out infringement, to show that parallel things, with levels or planes, were the same in structure and mode of operation as curved things, without levels or planes; that parallel surfaces were the same as mathematical points which were not parallel, and that two mathematical points separated by a certain distance were the same as two plane surfaces separated by a certain distance; in effect, that a guide constructed

with two parallel surfaces in different planes could possibly have the same structure and the same mode of operation as a guide with an irregular curved surface. It is a relief to turn again for light and guidance from the investigation of these occult relations between dissimilar things to the patent in suit.

The Knowles & Tatham patent is for an apparatus for grinding the plane surface of revolving tilted flats. At the close of the specification the patentees say:

"Having fully described our invention, what we claim and desire to secure by letters patent is—

"The hereinbefore described arrangements of apparatus for grinding the flats employed in carding engines in which revolving flats are employed, which arrangements of apparatus consist in fixed parts provided with surfaces, $e^2$ and $e^3$, formed parallel with each other and separated from each other by a difference of level such that a flat held against the surfaces, $e^2$ and $e^3$, will have its card-wire surfaces parallel to said surfaces, $e^2$ and $e^3$."

Then follows a description of the means for holding the flats against this fixed guide.

There is nothing hidden or abstruse or difficult to understand in the language of this claim. It fully describes, in simple terms, the invention which the patentees desired to secure by their patent.

For the purpose of holding, in the case at bar, that the defendant's guide infringes this claim, we are asked to add to the claim the following:

"We do not limit this claim, nor the invention covered by the patent, to the fixed guide with parallel surfaces separated from each other by a difference in level, as above set forth. This is only one of many specific forms which may embody our real invention. What we intend to claim as our real invention is a new method, irrespective of any specific form, in which two fixed guides, the flats, and the grinding roll, occupy a certain relation to each other, such relation being that, at each instant of time during the grinding operation, the position of the flat and card clothing is controlled by a point in the toe guide and a corresponding point in the heel guide at such a difference in distance from the grinding point as will compensate for the tilt of the flat relative to its bearings."

The meaning of the Knowles & Tatham patent as it now stands is plain; the position it occupies in the art is clear; and the court should not, by adding to it, or by construction, extend the scope of this monopoly beyond anything found or suggested in the specification or claim, or ever contemplated by the patentees.

The decree of the Circuit Court is affirmed, with costs of this court.