## RAMBUSCH DECORATING CO. v. A. WARD HENDRICKSON & CO., Inc.

### No. 1902.

District Court, E. D. New York.
Oct. 9, 1941.

Sidney E. Gottschall, of New York City (Bertram Sommer, of New York City, of counsel), for plaintiff.

Hoguet, Neary & Campbell, of New York City (Walter H. Free, of New York City, of counsel), for defendant.

CAMPBELL, District Justice.

This is an action brought by the plaintiff for the alleged infringement of Patent No. 2,179,161 issued to Edward Rambusch and Victor G. Anderson for Illuminating Device, granted November 7th, 1939, on an application filed August 18th, 1938.

The defendant has interposed the defenses of invalidity and non-infringement, and file wrapper estoppel.

Plaintiff is the owner of the patent in suit, and the required notice was given.

Plaintiff bases its action only on Claims 19 and 20.

The patent in suit is for an over-ceiling downlighting device, one of the principal elements of which is an auxiliary reflector, which the patentees called a "shovel".

The patentees said in their specification, with reference to the invention claimed in Claims 19 and 20.

"Another object of this invention is the creation of illuminating devices adapted to attain the first two objects hereinbefore recited and, which because of additional structure of appropriate shape and outline, incorporated therein will direct light upon a certain additional surface or surfaces of predetermined outline; and, which additional structure may be so positioned therein as to cast additional light upon at least a portion of the illuminated surfaces mentioned in the second object hereinbefore recited, or not, as desired."

They further in their specification, in describing Figs. 3, and 5, said

"Fig. 3 represents a view similar to that of Fig. 1 of a possible variant and modified embodiment which likewise casts light downwardly, and because of the presence in the device of this view of a certain additional structural element, a further lighting effect is cast diagonally down to one side.

"Fig. 4 represents a sectional view taken along the section line 4-4 in Fig. 3 looking in the direction of the arrows.

"Fig. 5 represents a diagrammatic perspective view similar to that of Fig. 2 in which there is shown in full lines a device of the character illustrated in Figs. 3 and 4 and by dotted lines the imaginary outlines of the light beams produced thereby, and, further by dot and dash lines the imaginary outlines of the patterns that such light beams effect upon the surfaces being illuminated by this device."

They further said in their specification "The present invention, in the main, is directed to the casting of light either generally downwardly, generally diagonally down to one side or both, towit: to certain lighting effects which, as a matter of convenience, we hereinafter respectively refer to either downlighting, side-downlighting, or back."

It seems clear to me that while the claims in suit are each for a combination what the patentees really described and claimed as a necessary element in the patent in Claims 19 and 20, which alone are in suit, was an auxiliary reflector, which they denominated a "shovel".

Plaintiff contends, and I believe rightly, that the name shovel, as applied to such reflectors, was a name of its own choosing, and not one colloquially used in the trade. That, however, does not seem to be important, as we are not concerned merely with names, but rather with a consideration of the facts and the surrounding circumstances.

The resemblance of the auxiliary reflector to the concave blade of an ordinary shovel would certainly lead to the belief that such descriptive name was colloquially used, but it is not supported by proof, but I will, for more easy comparison, use the word shovel in parenthesis, after the word reflector in describing or referring to other patents and the defendant's accused device.

The patent states the function of the shovel to be to direct light rays diagonally sidewise on a side wall of a room, "if in position to intercept the same". Considered so broadly I cannot see that the alleged invention shows any more novelty than does any reflector-type downlight located near a wall.

The patentees were not, as the plaintiff contends, pioneers in the field of over-ceiling downlighting. See Allgemeine German Patent 304,598.

The patentees were not the first to devise a reflector (shovel) of any kind, and the patent in suit does not cover all kinds of reflectors, shovels or mirrors, but is limited to the shovel described and claimed, this will be apparent when the prior art is analyzed.

Claims 19 and 20, which are the only claims in suit, read as follows:

"19. In an illuminating combination a ceiling having an aperture therein, a side wall and means above said aperture for illuminating a substantially rectangular area on said side wall, said means including a source of light mounted above the aperture and a reflector spaced apart from said source of light and disposed so that the lower edge of such reflector falls adjacent the plane of said aperture; said reflector having such reflecting surface as is generated by rotating a part of an ellipse, the foci of which are at the theoretical center of the source of light and the center of the aperture, respectively, about the imaginary line joining such points through an angle predeterminedly limited to accord with the width of the rectangular side wall area to be illuminated by such reflector."

"20. The structure recited in claim 19 characterized in that the reflecting surface of the mentioned reflector is that segment of a zone of an ellipsoid, the upper edge of which lies in an upper plane perpendicular to the mentioned imaginary line adjacent the minor axis of the mentioned ellipse, the lower edge of which lies in a lower plane parallel to the last mentioned plane and perpendicular to the mentioned imaginary line adjacent the plane of the mentioned aperture, and the respective side edges of which are defined by the prolongation past the center of the aperture of two side planes, defined by the right side edge of the side wall area to be illuminated and the center of the aperture, and the left side edge of the side wall area to be illuminated

and the center of the aperture, respectively, until such side planes intersect the zone of the ellipsoid of which said segment is a part."

It will be sufficient to consider Claim 19, as the decision on Claim 19, on the record in this case, would of necessity be the same for Claim 20, which distinguishes only in merely adding further limitations as to the dimension of the shovel.

The following limitations, which are important in the instant suit, are found in Claim 19 and whether they be self-imposed, or required to avoid the prior art, if they be not found in the defendant's accused device there can be no finding of infringement.

"means above said aperture for illuminating a substantially rectangular area;"

"the lower edge of such reflector falls adjacent the plane of said aperture;"

"said reflector having such reflecting surface as is generated by rotating a part of an ellipse,"

"the foci of which are at the theoretical center of the source of light and the center of the aperture, respectively,"

"an angle predeterminedly limited to accord with the width of the rectangular side wall area to be illuminated by such reflector."

The aim of the alleged invention is to provide a device "for illuminating a substantially rectangular area on said side wall." To accomplish this the side wall must lie close enough to the light-emitting aperture of the fixture to be within the normal visible range of the light rays, as the shape of the shovel will determine the light beams to be reflected to define the area to be illuminated.

This seems to me to be clearly established, and it makes the question of visibility material as the patentee Rambusch was doubtful of the effect if the side wall was distant 20 feet.

The patentees clearly limited the claims in suit to a shovel, the curvature of which is ellipsoidal, and there is no suggestion in the patent that any curvature of the shovel of a shape other than ellipsoidal was contemplated, or would serve the patentee's purpose.

This is clearly apparent from the fact that the law of the ellipse is followed by the patentees requiring in Claim 19 two foci, first the theoretical center of the source of light, second the center of the aperture, and the patent in suit includes only the ellipsoidal shovel, not because that is the only form claimed and described, but because that form only is capable of embodying the invention of the patent in suit. Winans v. Denmead, 15 How. 330, 342, 14 L.Ed. 717.

The defendant does not use an ellipsoidal reflector (shovel) but uses a parabolic reflector (shovel) which follows the law of the parabola, by having only one focus, and therefore the invention is not used by defendant.

The curvature of the shovel 48 is precisely specified in Claim 19, and the effect desired is described in the specifications on page 5, col. 1, line 74, through col. 2, line 13, and though that passage refers to the ellipsoidal reflector 14 of Fig. 1, the same property and advantage is ascribed to the shovel 48 in the specification in lines 57 to 70, col. 1, page 9. This results in the shovel 48 gathering the rays from the upper focal point, and diverging them through the conjugate focal point 2a (Fig. 5), coinciding with the center of the aperture 2 (lines 8–13, col. 2, page 5).

It seems clear to me that the properties described in the patent in suit are found only in an ellipsoidal reflector, and that entirely different properties are found in parabolic sperical and hyperbolic reflectors.

The patent in suit does not cover all reflectors and it seems clear to me that it does not cover a parabolic reflector, which has but one focus, whereas the reflector of the patent in suit, being ellipsoidal, has two foci and plaintiff cannot stretch its claim to cover a parabolic reflector by contending that it is substantially ellipsoidal.

The limitation that the lower edge of said reflector (shovel) falls adjacent the plane of said aperture, does not require extended consideration, as it is clear that by the term aperture it is intended to describe the opening in the plane of the surface that forms the aperture.

That is not true of defendant's accused device, as it clearly is shown that the lower edge of its reflector (shovel) is above the plane of the aperture.

The limitation that the foci which are at the theoretical center of the source of light, and the center of the aperture respectively, clearly means that the conjugate or lower focus of the ellipsoidal shov-

-el 48 must lie in the center of the plane of the aperture, as the patentees would not get the desired effect (lines 11–13, col. 2, page 5), unless the aperture is in and co-incident with the plane of the ceiling. See Figs. 3 and 5.

There is a slight difference in the location of the conjugate focal point 2a in the specification, and in Claim 19. In the specification it is said that the conjugate focal point 2a is "coinciding with or lying near the center of the aperture 2", whereas in Claim 19 it is specifically stated that the conjugate focus of the ellipsoidal reflector (shovel) 48, lies in "the center of the aperture" in the ceiling. The statement in the claim that the aperture is in the ceiling is not accurate, because the aperture is actually in the light fixture itself, but the exact position of the ceiling is not of moment with reference to the operation of the device, as the reflected rays do not, and cannot, engage the ceiling in practice by reason of the thickness of the flange 1.

Claim 19, it seems to me, discloses only what is necessary to properly set forth the invention, and the invention will not survive changes in its precise requirements, as a different result from that prescribed by the patent would be effected by such changes.

In the briefs of both parties are found frequent references to the arguments of Counsel in the Patent Office, but these do not furnish proof, and in this Circuit neither party may depend on arguments between the Patent Office and Patent Solicitor. Catalin Corporation of America v. Catalazuli Mfg. Co., Inc., 2 Cir., 79 F.2d 593, 594.

I have made my decision on the proofs offered on the trial of this action, and not on such arguments. Of course, on the question of estoppel the rejection of claim 16 by the examiner and the acceptance of that action by the patentees and the amendment by filing a new claim will be considered.

The Patent Office cited over 20 patents, but defendant relies only on three of them, viz.: Edstrom No. 1,867,502; Wardwell No. 1,818,875 and German Patent to Allgemeine No. 304,598.

The Edstrom Patent No. 1,867,502 shows a lighting device with an elliptical shovel 11 of limited horizontal angle, whose foci are at B and C instead of at A and C as specified in Claim 19 of the patent in suit.

That patent, it seems to me, imposed the limitation found in Claim 19 of the patent in suit with reference to the exact position of the focal points of the shovel 48, and the claim cannot be interpreted in any other way.

That patent will be discussed in greater detail when we come to the question of validity.

The Wardwell Patent No. 1,818,875 discloses an elliptical shovel in Figs. 1 and 7, and by light-ray lines demonstrates the principle of the ellipsoidal reflector, which is that light rays emanating from one focus of the ellipsoid are reflected thereby through the other or conjugate focus, and that when the conjugate focus is located in the light-emitting opening of the ellipsoidal reflector there is produced "a beam of light diverging as though originating from the center of the aperture" (lines 11 and 12, col. 2, page 9 patent in suit). The position of the reflector does not change the behavior of the light rays, therefore, the reflected rays threw a pattern of light on the road-surface of a side wall, "if in a position to intercept the same". (lines 56 and 57, col. 2, page 9 patent in suit).

German Patent to Allgemeine, No. 304,598 at Fig. 4 shows a shovel b′ which is an ellipsoid of revolution, its upper focus a, being located "at the theoretical center of the source of light", as stated in Claim 19 of the patent in suit, and its conjugate focus II being shown as located slightly below the light-emitting aperture of the fixture, instead of precisely in the center of the aperture, as required by Claim 19.

It is true that German patent did not disclose the "resulting beam pattern", but plaintiff did not attempt to prove, much less prove, that was accomplished by defendant's device.

It seems quite clear to me that the limitations in Claim 19 of the patent in suit, to which I have referred, were imposed by the prior art of record in the file wrapper, in addition to the optical necessities of use which the requirements of the patentees imposed on the device.

This brings us to the question of validity, as to which we will consider the following prior art offered in evidence by defendant, on which it relies, as it did not call my attention to any of the other patents or

516

publications alleged by it in its amended answer, to which I will not refer.

Patent No. 2,142,467 to Waterbury for Floodlighting Unit, granted January 3rd, 1939, on an application filed October 9th, 1936. That patent discloses a lighting device mounted on a bracket 15, for adjustment "to the best position for providing the light coverage desired", including a vertical position. There is shown a main reflector A, the opening of which forms the light-emitting aperture of the fixture. Within the main reflector A, and spaced apart from the source of light, with its lower edge adjacent the plane of the light-emitting aperture, is a curved "auxiliary reflector" 12 (shovel) which is so positioned "substantially parallel to the axis of the main reflector" that the rays from the lamp are reflected from it in the manner shown by the dotted lines in Fig. 1. Arrange this fixture on the bracket 15 in a vertical position near a side wall, and the rays reflected sidewise from the reflector (shovel) 12, in the manner indicated by the dotted lines, will impinge upon the side wall, "if in a position to intercept the same", as specified in the patent in suit. The shape of reflector 12 (shovel), limited as it is in its horizontal width, will with the strength of the lamp determine some kind of light pattern but not a rectangular beam pattern which will be thrown on the side wall.

The ceiling in the patent in suit adds nothing to the combination, and it is not even said to be illuminated, and while it is said to furnish an aperture, that is not true as the aperture is furnished by the fixture itself.

The rays deflected by the Waterbury reflector (shovel) 12 do not intersect in the center of the light-emitting aperture, as required by Claim 19 of the patent in suit, but cross at a point below the aperture. Therefore, according to plaintiff's evidence defendant's device is much closer to Waterbury than to the patent in suit.

While the reflector (shovel) of Waterbury may not be shown as ellipsoidal, the direction of travel of the rays reflected therefrom follow the optical law of the ellipsoid reflector, indicating that it is ellipsoidal.

Whether the Waterbury reflector (shovel) 12 be or be not ellipsoidal it is more so than defendant's accused device.

If the claims in suit of the patent in suit be construed so broadly as to apply to defendant's device, they would also apply to the earlier Waterbury patent, and be invalid.

Patent No. 1,867,502 to Edstrom for Light Reflector, granted July 12th, 1932, on application filed March 7th, 1930, reference to which has been heretofore made, discloses a device which as shown is affixed to the floor, and illuminating a prescribed portion of a side wall 20, but the specification states "In Fig. 3, the reflector is positioned at the bottom of the surface 20. It could of course be hung downwardly from a bracket at the top of this surface with equal efficiency". (11 77–81 p. 2). Following the optical law of the ellipsoidal reflector the conjugate focal point C of the reflector (shovel) 11 acts as an independent source of light, regardless of the fact that a second ellipsoidal reflector 10 is used as the main reflector. The size and shape of the reflector (shovel) 11 determines the shape of the side wall area illuminated, and that patent in describing the shaping of the reflector (shovel) 11 says, "The amount cut away, however, varies with the purpose of the reflector, should it be desired to illuminate a relatively small area, less than half will be cut away." In view of that statement any one skilled in the art would be free to cut the reflector (shovel) 11 to any shape and size to suit his side-wall-lighting requirements.

That patent was cited by the Patent Office, but it is prior art over which the patent in suit cannot be extended to cover defendant's device.

Patent No. 1,347,268 to Godley for Parabolic Sectional Reflector, granted July 20th, 1920, and Patent No. 1,737,027 to Schoonmaker for Headlight, granted November 26th, 1929, were not cited by the Patent Office, but were offered in evidence on the trial of this suit, to show that the technique of making a segmental shovel for directing rays diagonally through a light-emitting aperture in a lighting device is open to use by the public.

Schoonmaker, in speaking of his reflecting strips 6, says "These may be formed in the reflector by bending the material thereof, or they may be separately formed and attached."

Godley says "The reflector is formed of a continuous sheet metal stamping 1 the lower half of which is preferably substantially the same as the lower half of an

ordinary parabolic reflector having the longitudinal axis 2 and the focal point 3, thus forming the parabolic reflecting surface 4 from which the reflected rays of a filament 5 are directed forwardly in substantially parallel relation to one another, as indicated at 6. The upper half of the reflector is made up of a series of parabolic sectors 8, 9, 10, 11 etc. (nine being shown, although the number may vary), having a common focus 20 located on the axis 2 rearwardly from the focus 3." (11 61–75 p. 1). The last quotation shows that Godley was of the opinion, contrary to that expressed by plaintiff's witness Dr. Gill, that it was possible to construct at least nine such parabolic sections within the confined limits of an automobile headlight. Even with separate parabolic segments, that patent shows at 21 that the rays may be diffused in diverging directions, and that is what defendant's reflector (shovel) does. Whether reflected from an automobile headlight, or from a ceiling reflector of similar shape, the light rays act the same.

Patent No. 1,818,875 to Wardwell for Headlight, granted August 11th, 1931, to which reference has hereinbefore been made, disclosed an ellipsoidal shovel, the stepped segments of which as shown in Fig. 7 are ellipsoidal (11 1–14 p. 4). The segments of defendant's shovel are not ellipsoidal, but are parabolic, but like defendant's shovel that of Wardwell is "approximately semi-circular; that is in planes substantially at right angles to the major axis 2–2" (11 8–10 p. 2).

The ellipsoidal shovel of Wardwell with "the source of light located about the rear focus (11 24–26 p. 3), and the light-emitting aperture "arranged approximately at the front focal point 13 of said reflector (11 33–34 p. 2), generally describes plaintiff's shovel, and light rays being indifferent to the position of the device it would, when associated with a ceiling, act in the same way as plaintiff's device, with its reflected rays illuminating a side wall.

Whether in a horizontal, or vertical position the type of reflector with which we are concerned acts the same.

German Patent to Allgemeine Elektricitats Gesellshaft in Berlin, for Illuminating Body for Exterior and Interior Illumination, issued March 26th, 1918. That patent, to which reference has hereinbefore been made, regardless of any criticism, discloses a downlight with "a lamp and a reflector behind an apertured wall." In Fig. 4 is shown an ellipsoidal reflector (shovel) b' with one focus at the lamp, and with its conjugate focus II near the center of the light-emitting aperture. The description of Fig. 5 shows the intention to mount the light above the ceiling. The description of Fig. 4 offers "the possibility of selecting an angle of radiation of the light rays proceeding from the second focal point of any desired magnitude (about 140° in the example)", which indicates the realization by the patentee that by shortening or extending the lower zone of the auxiliary reflector b' the angle at which the lowermost impinging ray would be reflected could be controlled. This disclosure contemplates that if the reflector b' were extended down to the plane of the conjugate focal point II, the angle of radiation would approach 180° and so reflect rays along or very close to the ceiling line. As the length of the shovel of the patent in suit depends upon the area to be illuminated it might at times be no longer than the reflector (shovel) b' of that German Patent Fig. 4, that is it might stop short of the conjugate focus.

Only half or 180° of the German reflector (shovel) b' is effective to light one half of a room, with the other part illuminating the other half of the room, and the position of the side wall determines the effectiveness of the horizontal angle of the reflector (shovel) b' to illuminate it. It is common practice to paint out such parts of a reflector as are not to be used.

Of course, in considering the prior art to determine the question of anticipation, these patents must be considered for what they show, and not what they might be made to show by making changes in them, and this is particularly true of the German Patent, which is a foreign patent, and in my determination of their holding, as to anticipation, I have so construed them.

From my examination of the prior art in evidence I find that reflectors in the shape of shovels are old, as are reflectors (shovels) of the stepped segmented type, whether spun or otherwise shaped from sheet metal, and whether made integral or separate from the main reflector. I also find that the law of the ellipse and the law of the parabola were well known, that the distinction between ellipsoidal and parabolic reflectors was understood, and that they function differently to attain the desired result.

■ Limited as it is by the terms of the claim itself, as well as by the prior art, Claim 19 of the patent in suit is valid, but if it be attempted to so broaden the claim as to cover the accused device of the defendant it would be necessary to make changes, which would not only be contrary to the invention of said claim, but would effect a result different from that which the patentees prescribed.

Claim 20 requires no further discussion as it is even more limited than Claim 19, and what I have said about Claim 19 applies to Claim 20.

■ This brings us to the question of infringement.

Defendant in its brief, while denying infringement, suggests that even if it be found to be an infringer in the case at bar it could only be held to be a contributory infringer. This does not seem to me to require any extended discussion as it seems clear to me that defendant controlled the installation of the accused illuminating device for the Airlines Terminal Building and if there was an infringement it was a direct infringement.

Defendant's accused device comprises a container having a light-emitting aperture whose plane is inclined to conform to the curvature of the ceiling of the room in which it was intended to be mounted. Opposite the lowest edge of the light-emitting aperture there is positioned a stepped auxiliary reflector (shovel), which in plan, occupies an angle of 180°.

Both sides are in agreement that the following is the law of the ellipse, that a ray emanating from one focus, and reflected from the surface of the ellipsoidal reflector passes through the conjugate focus.

They are likewise in agreement, that the following is the law of the parabola, that if a point source of light were placed at the focus of a parabolic mirror, the rays reflected from it would all travel parallel to the axis of the parabola.

What the witness Manuci, the designer of defendant's device, said he sought· was to have the light reflected by the reflector (shovel) through the light-emitting aperture so as to secure light distribution over the entire area of the inclined aperture, even though the light had to be directed under the depending lip produced by the inclination of the aperture. To accomplish his object he selected a parabolic sectional reflector, with which he could direct the rays in the direction desired under the lip from a source of light at the single common focus of the parabolic sections.

The witness Manuci said that he did not see Rambusch patent until after he drew the design of defendant's accused device, and that he determined to use parabolas instead of ellipses because he thought that he got more out of a band of light than he would get out of individual rays.

The manner in which the witness Manuci selected the stepped segments of his reflector from among the parabolas of his parabolic work sheet (Ex. A.) was demonstrated on the trial, and the theoretical result is shown on defendant's drawing (Ex. C.).

Of course some of the beams or rays reflected from the several steps or segments of defendant's reflector (shovel), in order to pass through the light-emitting aperture of the device cross at some place, but not at a common point, theoretical or otherwise, and in any event they do not cross at the center of the light-emitting aperture. To do that the defendant's reflector (shovel) would have to be an ellipse whereas it is clearly shown in the case at bar that the defendant's reflector (shovel) is not ellipsoidal, and plaintiff failed to show to the contrary by its model said to resemble defendant's device, (Ex. 11), in which the crossing point of the directed rays was far from the center of the aperture.

I am convinced that the actual reflector (shovel) constructed by defendant conformed to the stipulated drawing of defendant's reflector (shovel) as nearly as possible, that is that the sharp angles of the drawing could not be reproduced in spinning the reflector (shovel), but the segments did substantially coincide. This proof was not overcome by any direct evidence, but, while I am certain that plaintiff did not deliberately distort the templet, the possibility of unintentional distortion in the taking of the plaster of paris cast, and the later spinning is such that I must, and I do, accord greater weight to the direct testimony of the witness Manuci.

The defendant's reflector (shovel), is parabolic, therefore, it does not infringe Claim 19 because it is not ellipsoidal, and therefore, cannot have two foci.

Dr. Gill, called by the plaintiff, testified that under certain conditions a small segment of any conic section may be made to coincide with a small segment of another,

be it elliptical, circular, parabolic, or hyperbolic, but the fact still remains that all retain their characteristic optical laws, and that optically an ellipse will always remain an ellipse, and the parabola will always remain a parabola, and they never will be the same, and plaintiff has failed to show to my satisfaction that defendant's parabolic segment reflector (shovel) is an ellipse, or even behaves optically like an ellipse. Furthermore, I am not convinced that the defendant could not construct the segments of its reflector (shovel) in the way described, because it seems to me that Godley, having been able to do it in a headlight, defendant could do it in its downlighting system. Concededly the words "converges" or "crossing" are not used in the claims in suit of the patent in suit, but the requirement that the conjugate focus be at the center of the light-emitting aperture and the statement in the specification that "these light rays passing through 2a provide a beam of light diverging as though originating from the center of aperture 2" (11 10–13, p. 5), certainly fixes the point where the light converges and the point of crossing at the center of the aperture. No theoretical crossing of the beams somewhere in defendant's device can be a substitute for a secondary focus, and in any event the crossing must take place at the center of the light-emitting aperture. This certainly was not shown as to defendant's device as even in plaintiff's model 11, claimed to be of defendant's device, the crossing was not at the center of the aperture.

There is no proof that there is embodied in or resulting from the alleged use of defendant's device in the Airlines Terminal Building of a rectangular light pattern on a side wall, as required by Claim 19.

The combination of a ceiling having an aperture therein, and a light source above the aperture, and a reflector, required in Claim 19, is an old combination, but the requirement that this reflector must illuminate "a substantially rectangular area" of a wall, and this wall must be in a position to intercept the rays reflected from the reflector (shovel), as stated in the patent in suit (11 56 and 57, Col. 2, p. 9), is novel over the German Patent to Allgemeine. Plaintiff failed to prove that defendant's reflector (shovel) illuminates "a substantially rectangular area" on any wall, and also that the defendant's reflector (shovel) is of such angular scope as to ac-

cord with the width of the rectangular side wall area to be illuminated."

Plaintiff claims that its patent is for a combination, therefore, if any essential element of the combination is not found in the defendant's device, then defendant's device does not infringe, and it seems to me that as I have pointed out in this opinion, that a number of essential elements of the combination are not found in the defendant's device.

The range of equivalents which plaintiff would be compelled to claim to bring defendant's device under the patent in suit, would in my opinion be greater than would be allowed even if the patent in suit was a pioneer patent, which it is not. The patentees of the patent in suit were not the inventors of all kinds of reflectors, and did not invent a parabolic reflector, and are only entitled to such equivalents as are necessary to protect their invention. The defendant's accused device does not infringe.

Defendant raised the defense of file wrapper estoppel, which we will now consider.

In the original application for the patent in suit was a Claim 16, which was practically identical with Claim 19 here in suit, except for the limitation in Claim 19 that the angle through which the auxiliary reflector 48 is rotated be such as "to accord with the width of the rectangular side wall area to be illuminated by such reflector." The word "wall" as used in Claim 16 means "ceiling".

The Official Action of July 20th, 1939, (Ex. J. p. 187) by the Examiner was as follows: "Claim 16 is further rejected on either Ger. 304,598, Rambusch 2,094,670 or Sibbert 2,134,491 in view of either Wardwell 1,818,875, Wheeler 254,578, Edstrom 1,867,502 or Fr. 821,492. To substitute the sectional elliptical reflector of the last mentioned patents for the reflectors of the first mentioned patents is not invention."

In the amendment filed August 19th, 1939 (Ex. J. p. 194 line 1), Claim 16 was cancelled and Claim 54 now Claim 19 containing the following additional language "a side wall and means above said aperture for illuminating a substantially rectangular area on said side wall" and "to accord with the width of the rectangular side wall area to be illuminated by such reflector", was presented.

The Official Action of August 23rd, 1939, (Ex. J. p. 226) allowed Claim 54 now 19.

Claim 16 merely called for rotating the auxiliary elliptical reflector through a predetermined limited angle, but plaintiff cannot have Claim 19 construed so broadly as to cover the same subject matter as the cancelled Claim 16, but it must be limited by the clause "to accord with the width of the rectangular side wall area to be illuminated by such reflector."

 Claim 19, with the added words of limitation, cannot be given the same construction and range of equivalents as the cancelled Claim 16. Enison-Freeman Co., v. Levy, 2 Cir., 55 F.2d 1057; Keystone Driller Co. v. Northwest E. Corp., 294 U.S. 42, 46, 55 S.Ct. 262, 79 L.Ed. 747.

Plaintiff contends that by reason of the earlier rejection of Claim 16 by the Examiner in the Official Action of July 20th, 1939, which read as follows "as being fragmentary and incomplete. Said claim defines an apertured wall, a light source and a reflector 48, not sufficient structure to constitute a properly operative fixture" the amendment was made to perfect the form and not because of any rejection on art. This contention is not sustained, as it is clearly apparent that the amendment was made to overcome the rejection on art as a new element was introduced into the combination to accomplish that purpose.

In view of the file wrapper estoppel it does not seem to me that Claim 19 may be so construed as to sustain the charge of infringement.

Plaintiff has failed to prove that defendant's device illuminates "a substantially rectangular area" on a side wall as required by Claim 19, and it cannot succeed by contending that it is capable of so doing under some assumed circumstances, because defendant's reflector (shovel) is limited in lateral angle, as that is exactly what Claim 16 defined when it said "through a predetermined limited angle."

Plaintiff, by the patentee's cancellation of Claim 16 and the amendment of the application by adding the more limited Claim 54, now 19, is estopped from claiming that defendant's device infringes either Claim 19 or Claim 20 of the patent in suit.

The plaintiff offered evidence of commercial success, but in my opinion it related principally to the shovel, but in any event that did not constitute proof of in-vention and should be considered only when the question of invention is in doubt. There is no doubt in this case that, limited as I have shown it to be, the patent is valid, but commercial success does not relieve from the limitations voluntarily imposed or imposed by the prior art.

Subject to the limitations hereinbefore shown the patent is valid, but is not infringed.

A decree may be entered in favor of the defendant, against the plaintiff, dismissing the complaint on the merits with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion.